William W. WINEGAR, Petitioner,

v.

CORRECTIONS DEPARTMENT, Respondent.

No. M103–73 C.A.

United States District Court, W. D. Michigan, N. D.

Aug. 9, 1977.

William W. Winegar, in pro per.

Frank J. Kelley, Atty. Gen. of Michigan, Lansing, Mich., for respondent.

## OPINION

FOX, Chief Judge.

This habeas case is before the court upon remand from the United States Court of Appeals for the Sixth Circuit, with directions to reopen the case in light of the decision of the Michigan Supreme Court in a case involving petitioner's accomplice, Robert Mauch. *People v. Mauch*, 397 Mich. 646, 247 N.W.2d 5 (1976). Both petitioner and the respondent have consented to the remand.

The habeas petition had been heretofore denied by this court without prejudice because subsequent to its filing the conviction of petitioner's accomplice had been reversed by the Michigan Court of Appeals and a new trial granted.[1] Since the issue raised by Mauch was also applicable to petitioner, it appeared that petitioner could obtain the same relief in the state courts which had been afforded to Mauch. Therefore, the court, in the interest of federal-state comity, dismissed the habeas petition without prejudice to allow petitioner to pursue relief in the state courts. The order of this court dismissing the petition further specified that in the event the Michigan courts refused to grant petitioner relief similar to that granted to Mauch, petitioner could reopen the present case.

At the time of the dismissal of petitioner's habeas petition by this court, Mauch's conviction had been reversed by the Michigan Court of Appeals on the ground that although he had pleaded guilty to the crime of kidnapping, the trial court in accepting the plea made no mention of asportation. The Michigan court held that asportation was necessary for the crime of kidnapping,

---

1. *People v. Mauch*, unpublished per curiam opinion, dated February 14, 1975.

and that the trial court's failure to mention the element of asportation during the plea taking proceeding violated the rule of *People v. Barrows*, 358 Mich. 267, 99 N.W.2d 347 (1959). *Barrows* dealt with the trial court's duties in accepting guilty pleas and particularly the necessity for the trial judge to directly question the accused to establish the crime and the defendant's participation in it. The Michigan Court of Appeals reversed Mauch's conviction and ordered a new trial. However, the Michigan Supreme Court has now reversed the decision of the Michigan Court of Appeals and reinstated Mauch's conviction. *People v. Mauch*, 397 Mich. 646, 247 N.W.2d 5 (1976). The Michigan Supreme Court held, among other things, that the proper course in reviewing a plea of guilty made, as here, in 1962 is to evaluate the record according to the law as it existed at the time the plea was entered rather than by current standards, and that Mauch's plea was not rendered fatally defective by failure of the record to disclose Mauch's acknowledgment of the element of asportation of the kidnapping victim. The court held that the law governing the validity of a plea of guilty in 1962 was that the trial judge personally address the accused and satisfy himself that the accused's plea was both true and voluntary, and that the accused understood the offense to which he pleaded guilty. Since the record established these requirements in *Mauch's* case, his conviction upon his guilty plea was held to be valid.

Since Mauch's conviction has now been reinstated, the court will proceed to consider the present petition. It is directed to petitioner's conviction on January 25, 1962, in the Circuit Court of Jackson County, upon his plea of guilty to two counts of kidnapping in violation of MCLA § 750.349. Petitioner attacks the validity of his conviction on seven grounds which are quoted verbatim:

"(a) Michigan's kidnapping statute is vague and overbroad, and the state has so held, but denies this petitioner Equal Protection of the Law by refusing to apply it's modified construction to his cases. A fortiorari, the convictions were obtained through an involuntary plea without any evidence or factual basis whatsoever.

"(b) The convictions are based on involuntary and COERCED PLEAS. The court never advised the petitioner of the true nature of the accusation, the consequences of his plea, his right to confront witnesses or of the protection afforded against self-incrimination and denied equal protection of the law thereby.

"(c) The assistance of counsel was denied at the 'plea-taking' stage and several crucial preliminaries despite three specific requests for it, and the effective assistance of counsel was denied thereafter and on appeal.

"(d) There was a denial of due process and equal protection because the normal legal proceedure (sic) was not followed and the Examining Magistrate deliberately perjured his Return to conceal the truth and permit conviction for two uncommitted crimes.

"(e) The doctrine of former jeopardy forbade both these prosecutions because they arose out of the same transaction, or offense, for which a sentence had already been imposed.

"(f) The courts lacked jurisdiction because they failed to set bail.

"(g) Cruel and Unusual Punishment was inflicted in violation of the 8th Amendment."

The respondent has filed a motion to dismiss the petition for failure to state a claim upon which relief can be granted. The primary ground for dismissal is failure to exhaust state court remedies with respect to most of the grounds asserted as a basis for relief.[2] Respondent appears to be cor-

2. Petitioner had two other habeas petitions pending in this court, Case No. M24–72 and Case No. M105–73. An order was entered consolidating all three actions. An order was also entered scheduling an evidentiary hearing in all three cases on May 12, 1975. The hearing was held on that date and also on the adjourned date of June 2, 1975. Petitioner offered evidence on the issues raised in Case No. M24–72, but not with respect to the issues in the present

rect in its position that the petitioner has not exhausted his state court remedies with respect to most of the claims which he now asserts here. Following his conviction in the Jackson County Circuit Court, petitioner appealed to the Michigan Court of Appeals which affirmed his conviction. *People v. Winegar*, 13 Mich.App. 162, 163 N.W.2d 821 (1968). Leave to appeal to the Michigan Supreme Court was denied by that court. 381 Mich. 799 (1969). A petition for a writ of certiorari was denied by the United States Supreme Court on November 24, 1969. The opinion of the Michigan Court of Appeals is set forth here in its entirety:

Per Curiam. On January 25, 1962, defendant was convicted, upon a plea of guilty, of 2 counts of kidnapping (CL 1948, § 750.349 [Stat.Ann.1954 Rev. § 28.-581]) and was sentenced to a prison term of 20 to 30 years on each count. He filed a motion for a new trial urging that his plea of guilty be set aside and the sentence vacated. From a denial of his motion defendant appeals.

Defendant asserts that the court below erred in denying his motion because at the time his plea was accepted he had not been informed of the nature of the accusation against him (as required by the then applicable section 2 of Court Rule 35A [1945]) and that his plea was not freely, understandingly and voluntarily made.

As the provisions of this court rule were interpreted in *People v. Winegar* (1968), 380 Mich. 719, 158 N.W.2d 395, and *People v. Stearns* (1968), 380 Mich. 704, 158 N.W.2d 409, we find compliance therewith from our examination of the record. We find no error in denying defendant's motion to set aside his conviction and with his plea.

Affirmed.

Some time later, petitioner filed a complaint for habeas corpus in the state courts. The Michigan Court of Appeals treated the petition as an application for leave to take a delayed appeal, which the court upon due consideration denied. *Winegar v. Department of Corrections*, 41 Mich.App. 318, 199 N.W.2d 874 (1972). Leave to appeal to the Michigan Supreme Court was denied. The opinion of the Michigan Court of Appeals on this appeal is also set forth here in its entirety:

Per Curiam. Defendant has filed a complaint for *habeas corpus* which is treated herein as an application for leave to take a delayed appeal from a conviction based upon a plea of guilty to the crime of kidnapping. M.C.L.A. § 750.349; M.S.A. § 28.581.

On January 24, 1962, the defendant entered his plea of guilty. An appeal was taken and the conviction upon the plea was affirmed by this Court. *People v. Winegar*, 13 Mich.App. 162, 163 N.W.2d 821 (1968). Leave to appeal was denied, 381 Mich. 799 (1969).

Defendant alleges that his plea did not conform to the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *People v. Jaworski*, 387 Mich. 21, 194 N.W.2d 868 (1972). The Supreme Court has determined that the requirements of *Boykin* are not to be made retroactive beyond June 2, 1969. *People v. Butler*, 387 Mich. 1, 195 N.W.2d 268 (1972); *People v. Carlisle*, 387 Mich. 269, 195 N.W.2d 851 (1972).

Leave to appeal denied.

■ It appears from the opinions of the Michigan Court of Appeals that the only issues raised in that court were that petitioner was not informed of the nature of the charge against him, that his guilty plea was not freely, understandingly, and voluntarily made, and that his plea did not conform to the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *People v. Jaworski*, 387 Mich. 21, 194 N.W.2d 868 (1972) with respect to advice as to his constitutional rights. These issues are substantially the same issues set forth in claim (b) in the

action. This is of no consequence, since the issues in the present case are basically legal issues as to which there are no material factual

disputes. In any event, petitioner was given the opportunity to offer evidence but did not do so.

present petition as quoted above. It may be that petitioner presented the other issues on motions for new trials in the trial court or in his applications for leave to appeal to the Michigan Supreme Court. However, petitioner cannot be deemed to have exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c) as to any issue, unless he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme Court.[3] The decisions of the Michigan Court of Appeals which are quoted above set forth the issues that were presented to that court. It would appear that none of the issues listed in the present petition are among them, except the issue designated (b). This issue is stated in the petition as follows:

"(b) The convictions are based on involuntary and COERCED PLEAS. The court never advised the petitioner of the true nature of the accusation, the consequences of his plea, his right to confront witnesses or of the protection afforded against self-incrimination and denied equal protection of the law thereby."

■ As stated by the Michigan Court of Appeals in *Winegar v. Department of Corrections*, supra, petitioner cannot complain of the failure of the trial judge to advise him as to the so-called *Boykin* rights, that is, the privilege against self-incrimination, the right to a jury trial, and the right of confrontation.[4] *Boykin* does not have retroactive application and applies only to pleas taken after June 2, 1969. *Lawrence v. Russell*, 430 F.2d 718 (6th Cir. 1970). Petitioner's plea here was entered in 1962. Moreover, even as to post-*Boykin* pleas, it has been held that *Boykin* does not require the separate enumeration of each right waived. Rather, *Boykin* requires that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary. *Fontaine v. United States*, 526 F.2d 514 (6th Cir. 1975).

3. The Michigan Supreme Court customarily refuses to pass on issues not presented in the courts below. *Young v. Morrall*, 359 Mich. 180, 187, 101 N.W.2d 358 (1960). So does the Michigan Court of Appeals. *Falk v. Civil Ser-*

A review of the arraignment transcript clearly demonstrates that petitioner's plea was intelligently and voluntarily entered. Petitioner and Mauch were arraigned at the same time. At their initial arraignment on January 23, 1962, the trial judge determined that each desired appointed counsel and entered a plea of not guilty as to each of the two kidnapping counts. On January 25, 1962, petitioner and Mauch appeared with counsel and changed their pleas to guilty. Copies of the arraignment transcripts, which are annexed to the habeas petition, show the following:

January 23, 1962

THE COURT: . . . . . Both you understand that you are here charged with a felony, kidnapping, and that, if you wish, you are entitled to have a trial by jury and, if you have no funds with which to hire an attorney, that upon request from you the Court may appoint an attorney for you, Now, Mauck, (sic) do you understand that?

MAUCK: Yes, sir.

THE COURT: Winegar, do you understand that?

WINEGAR: Yes.

THE COURT: Mauck, do you wish the Court to appoint an attorney for you?

MAUCK: Yes sir.

THE COURT: Winegar, do you wish the Court to appoint an attorney for you?

WINEGAR: Yes sir.

THE COURT: Mauck, do you have any funds with which to hire your own attorney?

MAUCK: No. I don't.

THE COURT: You have no funds at all?

MAUCK: Not a bit.

THE COURT: Winegar, do you have any funds with which to hire your own attorney?

WINEGAR: No. They attached all our property.

*vice Commission*, 57 Mich.App. 134, 255 N.W.2d 713 (1974).

4. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

THE COURT: Very well. The Court will appoint Albert Carroll, a member of this bar, as counsel for each of you; and let the record show that each of these defendants stands mute, waives the reading of the information, and a plea of not guilty will be entered in behalf of each of them; and each of you is remanded to the custody of the warden to await trial. Now, Mr. Carroll will contact you at the prison. If you wait a moment here, we have another. I better explain to you that on this file, AH–19, is the file in which it is charged that you did kidnap one Norman Richmond.

Virtually the same questions and answers appear in the transcript with respect to the second kidnapping count and are not repeated here.

<u>January 25, 1962</u>

(Both petitioner and Mauch appeared with counsel, Albert Carroll.)

THE COURT: Counsel.

MR. CARROLL: Will you gentlemen stand up there please?

(The 2 defendants walked up to the counsel table in front of the bench)

MR. CARROLL: If the Court please, I have talked with these defendants. Each of them informs me that he wishes to withdraw the pleas of not guilty entered for them by order of the Court on their arraignments and to enter a plea of guilty in the cases of the People v William Winegar and John Rogers. [Also known as Richard Mauch]

\*    \*    \*    \*    \*    \*

MR. CARROLL: Thank you, your Honor. And in each of these cases they wish to enter pleas of guilty: one to the charge of kidnapping Norman Richmond: the other to the kidnapping of Frank Miller.

THE COURT: Is that correct, Mr. Mauck?

MAUCK: Yes your Honor.

THE COURT: Is that correct Mr. Winegar?

WINEGAR: Yes.

THE COURT: And have any promises been made to you to get you to plead guilty? I will talk with Mr. Winegar. Have any promises been made to you to get you to plead guilty?

WINEGAR: No.

THE COURT: Have any threats been made against you?

WINEGAR: No.

THE COURT: Are you entering this plea freely and voluntarily?

WINEGAR: Yes.

THE COURT: And on this day and date in question here, the 28th of October, 1961, in the one case, you did confine Frank Miller against his will, and also Norman Richmond against his will. Is that correct?

WINEGAR: Yes.

THE COURT: Now, Mr. Mauck, have any promises been made to you to get you to plead guilty?

MAUCK: No, Your Honor.

THE COURT: Have any threats been made against you?

MAUCK: No.

THE COURT: Are you entering this plea freely and voluntarily?

MAUCK: Yes sir.

THE COURT: And did you on the 28th day of October, 1961, confine Frank Miller and Norman Richmond within this state against their will?

MAUCK: Yes sir.

THE COURT: Very well. The court will accept the plea of guilty of each of you, and I am aware of the fact that each of you is presently serving a life sentence which was imposed in an adjoining county; so I see no need to delay in passing sentence upon you. I may as well pass sentence this morning.

I am going to give each of you the same sentence in each case, and each of these sentences will run concurrently.

It is the sentence of this Court that you be confined in the State Prison of Southern Michigan for the minimum term of twenty years, the maximum term to be thirty years. The Court makes no recommendation. You are remanded to the custody of the warden for the execution of the sentence.

■ Petitioner's claim that he was not informed of the consequences of his plea, presumably because he was not informed of the maximum penalty of life imprisonment, is the same claim that his accomplice, Richard Mauch, made in the Michigan Supreme Court. *People v. Mauch*, 397 Mich. at 650, 247 N.W.2d 5. The claim was there rejected and properly so. This court agrees with the holding of the Michigan Supreme Court that Mauch's plea, as well as petitioner's, should be judged according to the standards existing at the time, and so judged, the pleas are valid. The Michigan court stated:

"The defendant's second assignment of error—that his plea is fatally defective because the court did not advise him of the maximum penalty for kidnapping—is likewise without merit.

"In 1962 the trial court was not required to inform the defendant of the maximum sentence prescribed by law for the offense. . . . Moreover, the defendant was represented by counsel: he was 39 years old at the time of his plea; and he was familiar with criminal proceedings. In fact, at the time he pled guilty he was serving a life sentence for another crime. Upon questioning by the court, defendant asserted that he freely and voluntarily entered his guilty plea. . .

"In reaching this conclusion, we reiterate that we are dealing at bar with a 1962 guilty plea. We emphasize that *Guilty Plea Cases*, 395 Mich. 96, 235 N.W.2d 132 (1975), represents the present state of the law regarding the acceptance of guilty pleas. We decline, however, to give the defendant in this case the benefit of this decision which was rendered more than 13 years after he entered his plea of guilty." 397 Mich. at 659, 247 N.W.2d 10–11.

This holding is equally applicable to petitioner's claim here. It is evident beyond dispute that petitioner was fully aware of the charges against him, that he was repre-sented by counsel when he entered his plea, and, as he himself confirmed on the record, that his plea was not induced by threats or promises but entered freely and voluntarily. As the Michigan Supreme Court has noted in connection with petitioner's appeal of another conviction, "He is no stranger to criminal proceedings." *People v. Winegar*, 380 Mich. 719, 158 N.W.2d 395 (1968).[5]

The court concludes that petitioner's claim (b) is wholly without merit.

■ Ordinarily, the court would end its opinion at this point by rejecting all other claims made by petitioner because of failure to exhaust state court remedies. Petitioner claims he has presented all his claims to the Michigan courts. As indicated above, the opinions of the Michigan Court of Appeals would indicate otherwise. However, petitioner has filed so many documents on so many occasions that it is difficult to determine what claims have been fully presented to the Michigan courts. The conviction he attacks here dates back to 1962. Indeed, he has already completed the sentence imposed for this conviction and is pursuing the matter because of the collateral consequences involved with respect to a life sentence he is serving on another conviction. The other claims that petitioner here raises are so spurious that it is inevitable that the Michigan courts, if they have not already done so, would surely reject them. Therefore, in the interest of bringing this tortured appellate process to a conclusion, the court will undertake to pass on the other claims raised by petitioner.

### CLAIM (a)

Petitioner claims the Michigan kidnapping statute (M.C.L.A. § 750.349) is unconstitutional. In support of this claim, he cites *People v. Adams*, 389 Mich. 222, 205 N.W.2d 415 (1973), which, he says, held that the statute was unconstitutional. The case does not so hold. In *Adams*, the defendant pleaded not guilty to a charge of kidnapping and was brought to trial. The court

5. Petitioner's long criminal record is detailed in a footnote in that case, 380 Mich. at 728, n. 1, 158 N.W.2d 395.

held that the statute was so broad that it required the interpolation of the historical concept of asportation to render it constitutional. The court did in fact judicially read into the statute the requirement of asportation as an element of the crime of kidnapping. However, since the trial judge had failed to instruct the jury as to the requirement of asportation, the court held that reversible error had been committed. As stated by the court in the case of petitioner's accomplice who made a similar claim, *People v. Mauch*, 397 Mich. 646, 247 N.W.2d 5 (1976), this claim is of no avail in the case of a plea of guilty entered in 1962, which was intelligently and voluntarily made, and in accordance with the standards existing at the time.

### CLAIM (c)

■ Petitioner claims that assistance of counsel was denied at the "plea taking" stage and thereafter "on appeal." The spuriousness of this claim is reflected by the record. As indicated above, petitioner was represented by attorney Albert Carroll at the time his plea was entered. If he is referring to the preliminary examination stage, it is now well established that the right to counsel at a preliminary hearing required by *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) applies only to preliminary hearings conducted after June 22, 1970, the date *Coleman* was decided. *Adams v. Illinois*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972).

■ With respect to counsel on appeal, the record shows that petitioner was represented by counsel in connection with the first appeal of his conviction. *People v. Winegar*, 13 Mich.App. 162, 163 N.W.2d 821 (1968). The reported decision states that attorney Raymond V. Arnold represented the petitioner in that appeal. Although an indigent state defendant is entitled to appointment of counsel on his first appeal as of right, he is not entitled to appointed counsel for discretionary appeals to state or federal courts thereafter. *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). The case of *Mitchell v. Johnson*, 488 F.2d 349 (6th Cir. 1973), upon which petitioner relies in his motion to amend his habeas petition (Pleading # 26), has been effectively overruled by *Ross v. Moffitt*, supra.

### CLAIM (d)

■ Petitioner relies on alleged irregularities in the procedures of the examining magistrate. Such irregularities, even if true, were waived by the entry of his guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McCord v. Henderson*, 384 F.2d 135 (6th Cir. 1967); *Rogers v. Kropp*, 387 F.2d 374 (6th Cir. 1968).

### CLAIM (e)

Petitioner claims that the Double Jeopardy Clause should have barred his kidnapping prosecutions because they arose out of the same transaction for which he had already been sentenced. The sentence to which he refers is a life sentence he received following his conviction in the Circuit Court of Ingham County upon his plea of guilty on November 17, 1961, to the offense of assault with intent to commit murder in violation of M.C.L.A. § 750.83. He was convicted on the kidnapping charges on January 25, 1962, in the Circuit Court of Jackson County following his plea of guilty to those charges in that court. Assuming the truth of his allegations as to this claim as set forth in his petition and supporting documents, it appears that the kidnapping occurred in Jackson County when petitioner and his accomplice seized two police officers, disarmed them, drove them to a wooded area in the county, and handcuffed them to a tree where they left them. The assault with intent to commit murder occurred the next day in Ingham County when petitioner shot another police officer who had stopped petitioner to check for identification and to search him.

■ Petitioner's double jeopardy claim is based on the use of the so-called "same transaction" test in determining whether an accused's constitutional protection against double jeopardy has been violated. This

test requires the prosecution, except in the most limited circumstances, to join at one trial all the charges against the accused that grow out of a single criminal act, occurrence, episode, or transaction. In support of his claim, petitioner relies on *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The short answer to petitioner's claim is that *Ashe* clearly indicates that the Supreme Court has not adopted the same transaction test. See also *Simpson v. Florida,* 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971). *Ashe* was decided under the more limited doctrine of collateral estoppel.[6] Moreover, even if the same transaction test were applicable, and even if the jurisdictional problem of the two offenses having occurred in two different jurisdictions could be resolved, it is obvious that the events here did not arise out of a single transaction. To classify as a single transaction the kidnapping of two police officers in Jackson County and abandoning them in that county handcuffed to a tree on one day, and assaulting another police officer in Ingham County the next day is to distort reality. There were here involved different crimes, against different victims, in different localities, on different days. Petitioner violated the provisions of two different statutes, each of which required proof of a fact or facts which the other did not. Petitioner's right to be free of double jeopardy was not violated. *United States v. Garner,* 529 F.2d 962, 971 (6th Cir. 1976).

## CLAIM (f)

■ Petitioner claims that the courts (presumably the magistrate and the circuit court) lacked jurisdiction because they failed to set bail. Even assuming this is true, the trial court would not be deprived of jurisdiction. Moreover, this irregularity would be deemed waived by the entry of his guilty plea. *Tollett v. Henderson,* supra; *McCord v. Henderson,* supra. It is also noted that at the time of his conviction on the kidnapping charges, petitioner had already been sentenced to life imprisonment on the assault with intent to murder charge. Under the circumstances, bail would have been academic.

## CLAIM (g)

■ Petitioner claims that the sentences here imposed constituted cruel and unusual punishment in violation of the Eighth Amendment. He pleaded guilty to kidnapping two police officers. The officers were disarmed and taken to a remote area where they were handcuffed to a tree and abandoned. The maximum punishment under the applicable statute, M.C.L.A. § 750.349, was life imprisonment, or any term of years. The sentence imposed was 20 to 30 years on each count to run concurrently. The sentences were well within the statutory limits and, in fact, have already been served. The claim is both moot and devoid of merit.

For the reasons herein stated, the respondent's motion to dismiss is granted and the petition is dismissed.

6. In *Ashe,* three or four men interrupted a poker game and robbed all six players. Petitioner was charged with robbing one of the players. He was acquitted at a jury trial, the jury finding him "not guilty due to insufficient evidence." He was later tried and convicted of robbing a second player. He challenged his conviction, contending that the prohibition against double jeopardy operated as a bar to the second prosecution because the only issue in each trial was the identity of the robbers. The Supreme Court agreed, holding that the *Fifth Amendment guarantee against double jeopardy embodies the doctrine of collateral estoppel, and since on the record in the case the jury in the first trial had determined by its verdict that petitioner was not one of the robbers, the State under the doctrine of collateral estoppel was constitutionally foreclosed from relitigating that issue in another trial.