Ahmad K. DANIEL, Petitioner,

v.

William OVERTON, Respondent.

Civ. A. No. 93–CV–72523–DT.

United States District Court,
E.D. Michigan, S.D.

Feb. 28, 1994.

Ahmad ·K. Daniels, pro se.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Petitioner, Ahmad K. Daniels ("Daniels"), presently confined at the Adrian Temporary Facility in Adrian, Michigan, has filed this *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, Daniels attacks his conviction for assault with intent to murder, M.C.L. § 750.83. Daniels pleaded no contest to this charge. In accordance with Michigan procedure, the trial judge examined the record established at Daniels' preliminary exam. The judge found that the record established that Daniels was guilty beyond a reasonable doubt of assault with intent to murder. Daniels was sentenced to 12 to 20 years imprisonment for this offense.

Daniels raises the following issues in his petition: (1) whether his plea bargain was illusory because it included a promise not to prosecute him as a habitual offender when he had no prior felony convictions, (2) whether trial counsel was ineffective because he advised Daniels he would be charged as a habitual offender and subject to a 15 to 30 year sentence if he did he did not plead guilty, (3) whether appellate counsel was ineffective because he did not interview Daniels concerning the habitual offender issue, and (4)

whether his sentence was based on materially incorrect information.

For the reasons explained below, this Court shall deny the petition.

## I. FACTUAL BACKGROUND

Daniels pleaded no contest to assault with intent to murder charges. When a Michigan defendant enters a no contest plea, the trial judge examines the evidence presented at the preliminary exam and makes a determination whether this evidence indicates that the defendant guilty or innocent. If the trial judge finds that the evidence shows that the defendant is guilty, the judge finds the defendant guilty and enters a judgment of guilt. The defendant is then treated as if he had pleaded guilty.

Before accepting Daniels' no contest plea, the trial judge carefully informed Daniels about the significance of a no contest plea, the nature of the charges against him, and his constitutional rights. The judge told Daniels that he had a constitutional right to demand a trial—a trial he would not have if he pleaded no contest. Plea Tr. at 7. The judge explained that by waiving his right to a trial Daniels was giving up his rights to the presumption of innocence, to a jury trial, to present and cross-examine witnesses, and to either testify or not testify himself at his trial. Daniels stated that he understood these rights and that he was waiving them by pleading no contest. Plea Tr. at 7–8.

The judge also informed Daniels assault with intent to murder was punishable by life imprisonment, or any term of years in prison. The judge told Daniels that the prosecution had recommended that he be sentenced to a minimum sentence within the sentencing guidelines. Most significantly, the judge further informed Daniels that if he sentenced him to a longer minimum term than that recommendation, he (Daniels) would "have a right to withdraw this plea." Plea Tr. at 6. Daniels stated that he understood all of this.

The judge inquired whether Daniels had any questions, whether he had been prom-

ised anything besides his plea agreement, and whether he had been threatened. Daniels answered no to each of these questions and stated that he wanted to plead no contest. Plea Tr. at 8.

The victim Lamar Blanchard ("Blanchard") testified at Daniels' preliminary exam. On a June summer evening at about 7:00 or 7:30 p.m. Daniels approached Blanchard on the street and shot him in the right side at chest height from a distance of about 8 feet. Blanchard ran away with Daniels in pursuit. Daniels fired four or five more shots, hitting Blanchard once more in the right side. Daniels ran away and Blanchard was taken to the hospital. Blanchard spent 15 days in the hospital and continued to have medical problems five months after the shooting.

Blanchard had known Daniels for about six months before the shooting. He expressed no doubt that Daniels was the man who shot him. Preliminary Exam Tr. dated November 14, 1990 at 4–35;

After reviewing the preliminary exam testimony, the trial judge found Daniels guilty of assault with intent to murder Blanchard. Plea Tr. at 9–12. On April 22, 1991, the trial judge sentenced Daniels to 12 to 20 years imprisonment, noting that "it is only by chance that [Blanchard] is not dead today and you are being prosecuted for first degree murder." Sentencing Tr. at 12.[1] Daniels' minimum sentence was within the recommended guideline minimum range of 7 to 15 years. Sentencing Tr. at 5, 13–14.

## II. EXHAUSTION OF STATE COURT REMEDIES

Respondent contends that Daniels did not present his ineffective assistance of trial counsel claim in the state trial court and failed to seek an evidentiary hearing in the trial court as required by *People v. Ginther,* 390 Mich. 436, 212 N.W.2d 922 (1973). Respondent's Answer at 7. Respondent further contends that Daniels may now file a motion for relief from judgment in the trial court pursuant to MCR 6.502, seeking an eviden-

---

**1.** The mandatory penalty for first degree murder in Michigan is life imprisonment without possibility of parole. M.C.L. § 750.316.

tiary hearing concerning this ineffective assistance of counsel claim. Respondent maintains that Daniels has not exhausted his state court remedies concerning this issue, because he presented the issue to the state appellate courts on the basis of an inadequate factual record and he has a remedy available whereby he may seek an evidentiary hearing and present the issue to the state appellate courts on the basis of a properly developed record. Respondent's Answer at 8.

Before a state prisoner is entitled to habeas review, he must have exhausted his available state remedies. *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). Under 28 U.S.C. § 2254(b) and (c), he must have "fairly presented" the substance of each federal constitutional claim[2] to the state appellate courts before raising it in a petition for a writ of habeas corpus. *Picard v. Connor,* 404 U.S. 270, 277–278, 92 S.Ct. 509, 513–514, 30 L.Ed.2d 438 (1971). A prisoner challenging a Michigan conviction is required to have raised each such issue in both the Michigan Court of Appeals and the Michigan Supreme Court before seeking habeas relief in federal court. *Dombkowski v. Johnson,* 488 F.2d 68, 70 (6th Cir.1973); *Winegar v. Corrections Department,* 435 F.Supp. 285, 289 (W.D.Mich.1977), *aff'd,* 582 F.2d 1281 (6th Cir.1978).

Daniels presented his ineffective assistance of trial counsel claim to both Michigan appellate courts. Daniels never received a hearing inquiring into the effectiveness of trial counsel. "A defendant who wishes to advance claims that depend on matters not of record *can* properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts...." *People v. Ginther,* 390 Mich. at 443–44, 212 N.W.2d 922 (emphasis added).

However, the Michigan Court of Appeals did not refuse to consider Daniels' ineffective assistance of counsel claim. That court ruled that "defendant has not shown he

was denied the effective assistance of counsel," citing *People v. Butler,* 193 Mich.App. 63, 66–67, 483 N.W.2d 430 (1992). The ineffective assistance claim in *Butler* was not decided on the basis of a failure to obtain a hearing in the trial court. The *Butler* court stated the rule that, to prevail on an ineffective assistance of counsel claim, the defendant must show that prejudice resulted from counsel's alleged error, and concluded that "[i]n the instant case, defendant has failed to show that prejudice resulted from his attorney's failure to move for severance or that the trial court would have granted his motion." *People v. Butler,* 193 Mich.App. at 67, 483 N.W.2d 430.

This Court concludes that, by citing *Butler* as authority, the Michigan Court of Appeals indicated that its rejection of Daniels' ineffective assistance of counsel claim was based on a finding that Daniels had not shown that he was prejudiced by his attorney's alleged errors. Therefore, this Court concludes that the Michigan Court of Appeals rejected Daniels' ineffective assistance claim on the merits.

Respondent contends that Daniels could file a motion for relief from judgment and seek an evidentiary hearing in the trial court. However, the Michigan court rule governing entitlement to relief upon filing such a motion states in pertinent part that, "[t]he court may not grant relief to the defendant if the motion ... alleges grounds for relief that were decided against the defendant in a prior appeal." MCR 6.508(D)(2).

This Court concludes that Daniels has exhausted his available state court remedies regarding his ineffective assistance of trial counsel claim because this claim was decided against him in a prior appeal. Daniels has also presented the other issues raised in this petition to the Michigan appellate courts. Consequently, the petition before this Court need not be dismissed for failure to exhaust state court remedies.

---

**2.** A writ of habeas corpus is available to a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

## II. ANALYSIS OF ISSUES PRESENTED

### A. ILLUSORY PLEA BARGAIN

■ Daniels contends that his plea bargain was illusory because it included a promise to dismiss a supplemental information charging him with being a habitual offender. Daniels contends that the promise to dismiss the habitual offender information was illusory because he had not been convicted of a prior felony which would have supported the habitual offender charge.[3] The plea bargain also included (1) a promise that the prosecution would move to dismiss a felony firearm charge then pending against Petitioner which was based on the same shooting as the assault with intent to murder charge and (2) a prosecutorial recommendation that Daniels receive "the minimum recommended sentence falling within the guidelines, as calculated by the Court." Plea Transcript of March 12, 1991 at 4. The trial judge stated on the record twice that if he imposed a minimum sentence longer than the recommended guideline minimum sentence, Daniels had the right to withdraw his plea. Plea Tr. at 6–7, 12.

This Court shall assume that Daniels is correct that the attempted resisting and obstructing a police officer charge would not have supported the habitual offender charge.

Nonetheless, this Court finds no merit in Daniels' claim that the plea bargain was illusory. As part of the plea bargain the prosecution promised to move for dismissal of the felony firearm charge, as well as dismissal of the habitual offender information. The plea bargain also included a prosecutorial promise to recommend that Daniels be sentenced within the recommended guideline sentence.

The felony firearm charge carrying a mandatory consecutive two year prison term was dismissed. Daniels was not prosecuted on this charge. This was a very real, tangible benefit Daniels received in consideration for his plea.

■ The judge sentenced to 12 to 20 years. The 12 year minimum was within the minimum sentence guideline range of 7 to 15 years. Daniels could have been sentenced to life imprisonment or any term of years. The judge sentenced him to 12 to 20 years despite finding that:

I understand from the report that's been filed here, that you deny you were even in the community here. However, I read the police report and the statements of the witnesses and I was satisfied beyond any doubt whatsoever that you are the person who committed this crime, no question about it in my mind; and I think what the presentence investigator is saying when he says your behavior is primitive, what that—what he is saying is that you were apparently stone cold sober, the fact that you could react so violently to a dispute over a relatively minor matter with somebody suggests the self-control of some sort of animal. That is the way animals might react. But not human beings, and that is primitive that you aren't able to control your basic instinct.

So as to advise you and other people like you, that this kind of behavior can't be tolerated, you have to be punished. The fact that you apparently are showing no remorse, suggests that you are not inclined to be rehabilitated. The depth of your danger has been indicated, by not only that fact that there were two shots, that they were two feet away, but also that you continued to chase the victim and continued to shoot at him.

The sentencing guidelines are 84 to 180 months. If there is any leniency to be shown and I think it may be appropriate because of your age, it should be with a sentence that's not at the top end of the sentence range, *although I think that*

---

**3.** Daniels apparently was once charged with the one year misdemeanor of attempted resisting and obstructing a police officer. He maintains that this charge could not be used to support a habitual offender information because (1) it is not a felony for purposes of Michigan's habitual offender statute, M.C.L. § 769.10, (2) he was not convicted of the charge, and (3) the judge who sentenced him for assault with intent to murder found that he was not represented by counsel regarding the attempted resisting and obstructing charge. Sentence Transcript dated April 22, 1991 at 3–5.

*could be justified, because of the clear intent to murder.*

Sentencing Tr. at 12–14 (emphasis added).

Daniels' 12 to 20 year sentence was a real, tangible benefit resulting from his plea bargain.

Daniels does not and cannot reasonably argue that he expected a shorter sentence than he received. His plea was conditional upon the judge not exceeding the recommended guideline minimum sentence range. This minimum sentence guideline range was not exceeded.

Daniels argues that his plea bargain was illusory because it protected him from something—a habitual offender charge—from which he did not need protection. The habitual offender information was dismissed as stipulated in the plea bargain. Regardless of whether this actually benefited Daniels, his plea bargain was not illusory. He clearly received other substantial, tangible benefits in exchange for his plea. The fact that his plea bargain *also* provided for guaranteed dismissal of a habitual offender charge which he would have beaten anyway does not make his plea bargain illusory.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

Daniels bases this claim on the following allegations:

> Trial counsel was ineffective for failing *to review the supplemental information for its accuracy.* Trial counsel told defendant if he didn't plead guilty that the prosecutor could supplement him with the habitual information. Trial counsel told defendant he would receive a 15–30 year sentence if he didn't plead guilty as charged. A review of the supplemental information would have revealed the conviction [sic] was dismissed for lack of evidence.

Petition at 5.

There are a number of reasons why this claim does not entitle Daniels to habeas relief.

■ First, in order to prevail on an ineffective assistance of counsel claim, the petitioner must prove that counsel's representation fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). In the context of a guilty plea the Supreme Court has held that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on *going to* trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Daniels cannot prevail on his ineffective assistance claim because he has not alleged that if his attorney had counseled him correctly about his habitual offender exposure "he would have pleaded not guilty and insisted on going to trial." *Hill v. Lockhart,* 474 U.S. at 60, 106 S.Ct. at 371.[4]

■ Second, although trial counsel may have been mistaken about whether Daniels could have been found to be a habitual offender, a careful reading of the record indicates that Daniels very likely would have faced a 15 to 30 year sentence if he did not plead guilty. The sentencing judge indicated that because of the certainty of Daniels' guilt, the ruthlessness and violence of the attack, Daniels' clear intent to kill his victim, and Daniels' lack of remorse, he believed that a

---

4. It is difficult to imagine how Daniels' status as a *habitual offender* could have been critical. Michigan's habitual offender statute allows judges to sentence repeat offenders to maximum sentences which are longer than the maximum sentence for first offenders *where the maximum sentence is a limited term of years.* The maximum penalty for assault with intent to murder for a *first offense* is life imprisonment or any term of years. Hence, habitual offender status does not increase the maximum sentence exposure of a person convicted of this crime. *See*

M.C.L. §§ 769.10(1)(b); 769.11(1)(b) 769.-12(1)(a).

Of course, this does not mean that whether a person convicted of assault with intent to murder is a first offender or repeat offender is unimportant. It is well established that "[t]odays's philosophy of individualizing sentences makes sharp distinctions for example between first and repeated offenders." *Williams v. New York,* 337 U.S. 241, 244, 69 S.Ct. 1079, 1081, 93 L.Ed. 1337 (1949).

minimum sentence at the top of the guidelines—15 years—would have been justified. Sentencing Tr. at 12–14. The judge sentenced Daniels to 12 to 20 years after noting on the record that the plea bargain constrained him to set Daniels' minimum sentence within the guideline minimum sentence range, or Daniels could withdraw his plea. Thus, even if trial counsel was mistaken about whether Daniels could have been found to have committed a prior felony or attempt to commit a felony, there is nonetheless no reason to believe that he was mistaken about Daniels' probable sentence exposure if he did not plead guilty.

Therefore, Daniels has not shown that trial counsel committed any error by incorrectly advising him about his probable sentence exposure if he chose to plead not guilty and go to trial.

█ Finally, this Court notes that the essence of Daniels' claim is that trial counsel was ineffective for unnecessarily securing a prosecutorial promise to dismiss a habitual offender charge which was not supported by the evidence. It appears to have not been necessary to include a promise to dismiss the habitual offender information in the plea agreement. The trial judge noted at Daniels' sentencing that he would not consider the attempted resisting and obstructing charge when sentencing Daniels "because he was not represented by counsel." Sentencing Tr. at 5.

However, Daniels has not shown that including this extra protection against being charged as a habitual offender harmed him in any way. Daniels implies that including protection against the habitual offender information in the plea bargain used up bargaining leverage which might otherwise have been used to secure him a shorter sentence. However, this is sheer speculation which is not supported by the record; his solemn and voluntary plea may not be set aside merely because there is some possibility he may have miscalculated the penalty the court would have otherwise imposed. *Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970).

## C. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Daniels asserts that appellate counsel was ineffective because he did not interview Daniels before filing a brief. Daniels maintains that, if appellate counsel had interviewed him, counsel "would have learned of the supplemental information" issue and pursued this issue in his appeal. Petition at 6.

To satisfy the prejudice prong of the test for ineffective assistance of counsel the claimant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding *would have* been different." *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068 (emphasis added).

█ As explained above in part III B of this opinion, Daniels has not shown that he was prejudiced by trial counsel's representation regarding the supplemental information issue. There is no reasonable probability that the outcome of Daniels' appeal would have been any different if appellate counsel had raised this issue. Failing or declining to present a non-meritorious issue on appeal is not ineffective assistance of appellate counsel.

█ Furthermore, Daniels had no constitutional right to require appointed appellate counsel to present every non-frivolous issue conceivable or suggested by him in his appeal. *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Strategic and tactical choices regarding the best issues to pursue on appeal "are properly left to the sound professional judgment of counsel." *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.), *cert denied,* 498 U.S. 1002, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990).

Consequently, this Court concludes that Daniels was not deprived of effective assistance of appellate counsel.

## D. ALLEGED INCORRECT SENTENCING INFORMATION

Daniels contends that the "Court of Appeals relied on inaccurate information in affirming defendant's conviction." Petition at 6. He asserts that the Michigan Court of Appeals relied on a certificate of a conviction

"that defendant adamantly denies ever being convicted of." Petition at 6.[5]

A sentence based on "extensively and materially false" information violates due process of law. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). However, the mere presence of factually incorrect information in a prisoner's record does not entitle him to relief from his sentence where the sentencing court did not base its sentence upon this information.

For purposes of this opinion this Court shall assume that the certificate of conviction stating that Daniels had been convicted of driving with license suspended and attempted resisting and obstructing a police officer was included in his state court records and that this certificate was incorrect. However, for the following reasons this does not entitle Daniels to habeas relief.

The sentencing judge stated on the record that the purported conviction for attempted resisting and obstructing "would not be taken into consideration" when imposing sentence. Sentence Tr. at 5. Explaining the basis of his sentence, the judge stated that:

> There are numerous things I have to consider in this case besides these things that you have talked about. The fact that your family is here is important. The fact that you are young is a factor in your favor. There is a chance that you could put yourself back on your feet, and put this behind you and not get in trouble with the law again. *The fact that you have not been convicted of a crime is significant,* and so those are positive factors.

Sentencing Tr. at 11 (emphasis added).

The judge continued to explain that his sentence was based on the violence of the attack, Daniels' clear murderous intent, his persistence in stalking, chasing, and firing repeatedly at the victim; the apparent near total lack of provocation for the attack, and Daniels' lack of remorse. Sentencing Tr. at 11–13.

It is clear from the record that Daniels' sentence and its affirmance was not based on misinformation regarding any previous convictions. This claim has no merit and does not entitle Daniels to habeas relief.

### III. CONCLUSION

Daniels' plea bargain was not illusory. He received substantial benefits in exchange for his no contest plea.

Trial counsel was not ineffective for advising Daniels that he faced a 15 to 30 year sentence if he went to trial, or for securing an agreement to dismiss an apparently defective supplemental habitual offender information. Furthermore, Daniels has not alleged that but for counsel's alleged errors he would have pleaded not guilty and insisted on going to trial.

Appellate counsel was not ineffective for failing to move for an evidentiary hearing regarding whether there ever was a basis for charging Daniels as a habitual offender. The habitual offender information was dismissed. There is no reasonable probability that the outcome of Daniels' appeal would have been different if appellate counsel had raised the issue as Daniels contends he should have.

Finally, Daniels was not sentenced on the basis of mistaken information about any prior convictions. He was sentenced within the recommended guideline minimum sentence range on the basis of the severity of his crime and the explicit recognition by the sentencing judge that he had *no* prior convictions.

For all of the above stated reasons, Daniels' petition has no merit.

Accordingly,

IT IS ORDERED that the petition for writ of habeas corpus is DENIED.

---

5. A copy of the allegedly mistaken certificate of conviction appears in this record as Exhibit A attached to the prosecution's response to Daniels' supplemental brief on appeal to the Michigan Court of Appeals.