PEOPLE *v.* ZALESKI.
SEPARATE OPINION.
KELLY, BLACK, and ADAMS, JJ.

1. CRIMINAL LAW—WITHDRAWAL OF PLEA OF GUILTY.
    *There is no absolute right on the part of an accused to withdraw a plea of guilty.*

2. SAME—WITHDRAWAL OF PLEA OF GUILTY—DISCRETION OF COURT.
    *A trial judge's discretion in the matter of withdrawing a plea of guilty should be exercised with great liberality where withdrawal is sought before trial and sentence, but the trial court need not grant the request to withdraw when persuaded that the request is obviously frivolous.*

3. SAME—WITHDRAWAL OF PLEA OF GUILTY—LEAVING SCENE OF FATAL ACCIDENT.
    *Request to withdraw plea of guilty to charge of leaving the scene of a fatal accident without stopping, identifying himself, and rendering assistance,* held, *properly denied, under record showing evidence taken at preliminary examination, plea of guilty*

REFERENCES FOR POINTS IN HEADNOTES
[1–4, 6, 7]  14 Am Jur, Criminal Law § 286 *et seq.*
    Right to withdraw pleas of guilty.   20 ALR 1445, 66 ALR 628.
[5]  14 Am Jur, Criminal Law § 241.

*was entered by leave of court over 9 months later as the case was ready for trial with the witnesses present, defendant was represented throughout by an attorney who advised him he had a meritorious defense, defendant obtained possession of his damaged car thereafter, and nearly 3 months later sought to withdraw plea of guilty on ground that when he pleaded guilty he was extremely nervous and suffering from chronic nervous indisposition and stomach ulcers and was then unable to stand a prolonged jury trial (CLS 1961, §§ 257.617, 257.619).*

OPINION OF THE COURT.

4. CRIMINAL LAW—WITHDRAWAL OF PLEA OF GUILTY—LEAVING SCENE OF FATAL ACCIDENT—PRELIMINARY EXAMINATION.

Trial court's denial of defendant's request to withdraw his plea of guilty to charge of leaving the scene of a fatal accident without stopping, identifying himself, and rendering assistance *held*, affirmed, under record presented, because of paucity of persuasive reason in support of the motion and without consideration of testimony taken at defendant's preliminary examination (CLS 1961, §§ 257.617, 257.619).

5. SAME—PURPOSE OF PRELIMINARY EXAMINATION.

The preliminary examination of one accused of crime has for its limited purpose only the determination by a magistrate whether there is probable cause to bind the defendant over for trial and is in no sense a trial to determine the guilt or innocence of an accused.

6. SAME—PRELIMINARY EXAMINATION—WITHDRAWAL OF PLEA OF GUILTY.

No proper determination of guilt may be made from testimony taken at the preliminary examination and used by a trial judge in passing on a defendant's request to withdraw a plea of guilty so that the issue of guilt or innocence can be tried to a court or jury.

7. SAME—WITHDRAWAL OF PLEA OF GUILTY—ISSUES INVOLVED.

The issue of a defendant's guilt or innocence is not involved in an application for leave to withdraw a plea of guilty, the issue for determination being whether the plea of guilty, when made, was voluntarily, advisedly, intentionally, and understandingly entered, or whether it was attributable to force, fraud, fear, ignorance, inadvertence, or mistake such as would justify the court in concluding that it ought not to be permitted to stand.

Appeal from Recorder's Court of Detroit, Traffic and Ordinance Division; Murphy (George T.), J. Submitted October 9, 1964. (Calendar No. 34, Docket No. 50,231.) Decided March 1, 1965.

Matthew Zaleski moved to withdraw plea of guilty to leaving scene of an accident. Motion denied. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *James R. Ramsey*, Acting Solicitor General, *Samuel H. Olsen*, Prosecuting Attorney, *Samuel J. Torina* and *Angelo A. Pentolino*, Assistant Prosecuting Attorneys, for the people.

*Oliver C. Nelson* and *Sheldon Otis*, for defendant.

ADAMS, J. By this appeal, defendant seeks our reversal of the trial judge's refusal to permit him to withdraw his plea of guilty to a charge of leaving the scene of a fatal accident without stopping, identifying himself, and rendering assistance in violation of CLS 1961, § 257.617 (Stat Ann 1960 Rev § 9.2317) and CLS 1961, § 257.619 (Stat Ann 1960 Rev § 9.2319).

## I.

Testimony on preliminary examination was as follows: At about 2 a.m. on January 1, 1962, John Gieraga was at the Retirement Bar on Davison, near Charest, in Detroit. He played snooker and had a couple of dances with two ladies he met for the first time. One of his friends present was Anthony Konowinski, age 58, whom he saw drink one bottle of beer. When the bar closed at 4 a.m., Gieraga, Konowinski, and the two ladies, who had asked to be taken home, got into Gieraga's car. The

men rode in front, the ladies in back. They drove
north on Joseph Campau, a 2-way street, and pulled
up to the curb between Burnside and Halleck to let
the ladies out. The car, an old one, stalled. Gieraga
had difficulty getting it to start again. He tried a
couple of times, whereupon Konowinski got out of
the car, saying, "Let me start it for you." He went
around the back of the car. As Gieraga saw his
hand trying the car door handle on his side, the car
was struck by an automobile. Gieraga received a
gash on the forehead and was knocked unconscious.
When he came to, Konowinski was lying ahead of
the car some 60 or 70 feet. The whole left side of
the Gieraga car was badly damaged.

About this time Charles Haskins and his wife, also
coming from a New Year's Eve party, were driving
north on Joseph Campau. They saw a car taking
off fast from lights and cutting in and out of traffic.
Mrs. Haskins testified:

"I noticed this car coming quite fast in back of us,
so I told Mr. Haskins to pull to the side and let him
pass us. As he passed us, not too far ahead of us,
he ran into a parked car and he hit it with such force
that it knocked him to the left side of the street.
*   *   *   I saw the smoke leave this parked car and
then I saw a long black thing fly out into the street.
Well, when he got knocked to the left side of the
street, as soon as he could regain control of the car,
he took off again and that's when we tried to see the
license number, but he was speeding so, we couldn't
see it. Then when he turned down this side street,
he almost ran head-on into another car and that's
what made him stop and that's when I saw the
license number."

Herbert Liggins, coming south on Joseph Campau,
heard the crash, saw a car coming at him, started
cutting his wheel, avoided the car, proceeded around

the block, and came back to the scene where he saw the body of Anthony Konowinski on the street.

Thaddeus Lukasik, who lived in the near vicinity of the crash, was driving home on McLain from the Blackberry Bar. A car came around the corner from Joseph Campau onto McLain. Lukasik noticed the front end was banged in. He took the license number and proceeded on around the block where he, too, came to the damaged automobile of Gicraga. He gave police the license number.

At 12:55 p.m., Detroit police found a 1954 red Chrysler bearing license number FH–1025 abandoned on Swift between Hull and Russell, about one and one-half miles from the scene of the accident. The car had extensive damage to the right front. Pieces of a car left at the scene of the crash on Joseph Campau were identified as having come from the red Chrysler.

At 1:50 p.m., Patrolman Tanner located defendant, the registered owner of the Chrysler, at his home. He was in bed in his shorts. He had bruises about his knee. When questioned how he got them, he said:

"I don't know, probably from the accident."

Zaleski was asked about the keys to the car and gave them to the police, saying there was only one set. The keys were checked with the car and found to fit the ignition.

Patrolman Alfred Wiesenhoefer and Officer Hatfield talked to the defendant at 9 a.m., January 2, 1962, in the cell block on the 9th floor of the police headquarters in Detroit. Wiesenhoefer testified that on that occasion Matthew Zaleski stated as follows:

"I work for Checker Cab and started at about 5 p.m. I worked until morning. Thursday was the last day I worked. I am single and I live with my

parents. I left home Sunday morning about 7 or 8 p.m. [*sic*] I don't know if I was drinking. I started out at the Columbia Bar on Joseph Campau. I was alone. I went downtown then. I drove downtown with my 1954 Chrysler coach. I stayed downtown about an hour or so, went out Chene street or Cass. I don't remember. Went to a few bars. One was the Metropole Bar at Chene and the Boulevard. Don't know when I left there. Went to work at a bar on Joseph Campau. The bar is in Hamtramck. I was drinking in the Orchid Bar. The officer showed me my car and the damage and I must have had an accident. I have one ignition key. When the officer arrested me, the key was in my pocket. The Orchid Bar was the last bar I was in. I think I left there when they closed. I was alone when I left the bar."

## II.

Complaint was filed and warrant issued on January 5, 1962. On that date, the defendant was arraigned, plea of not guilty was entered on his behalf, and bond was set in the amount of $500. Throughout these proceedings defendant has been out on bond. On February 8, 1962, defendant's examination took place in part. After several continuances, the examination concluded on June 6th and the defendant was held for trial.

On October 8, 1962, defendant, *by leave of court,* withdrew the plea of not guilty entered for him and entered a plea of guilty. The judge, following the required statutory examination, accepted the plea. The case was continued for probation report and sentence.

Following several continuances at the request of defendant's attorney, on December 17, 1962, written motion to withdraw plea of guilty, supported by affidavit of Matthew Zaleski, was filed. We come to the critical session before the trial judge on January 2, 1963. This is what occurred:

"*The Court:* Well, I will just make a little record of what happened in this matter. It was set for trial for October 8th, wasn't it?

"*Mr. Nelson* [defendant's attorney]: Yes.

"*The Court:* The people appeared here with their witnesses on that date, and you appeared here with Mr. Zaleski.

"*Mr. Nelson:* Yes.

"*The Court:* Prior to the October 8th, I read the examination carefully, so I would know what evidence had been presented in the matter at the examination. And prior to the time of the commencement of the trial, after it was called and the people had announced their witnesses were here, you stepped up and you said this: 'At this time, if Your Honor please, the defendant Zaleski, having conferred with me in the hall, and having been advised by me of his right to a trial by a jury, or to a trial by Your Honor, nonetheless has informed me that he elects to withdraw his plea of not guilty as previously entered to the charge as set forth in the information and cause to be entered instead of a plea of guilty to that charge.

" '*The Court:* Is that correct, Mr. Zaleski?

" '*Mr. Zaleski:* Yes, sir.

" '*The Court:* You have had nobody threaten you to get you to plead guilty?

" '*Mr. Zaleski:* No, sir.

" '*The Court:* Nobody has promised you anything to get you to plead guilty?'

"*The Court:* Mr. Zaleski says, 'No, sir.' The Court says, 'You are pleading guilty freely and voluntarily because you are guilty?' Mr. Zaleski says, 'Yes, sir.'

" '*The Court:* I will accept your plea of guilty and find you guilty and refer you to the probation department and adjourn it for sentence. When do you want me to set the sentence for?

" '*Mr. Nelson:* At Your Honor's convenience.

" '*The Court:* Four weeks—I will make it about Friday, the 2d of November. That will be time

enough, won't it? Get a rider on the bond or you will have to stay in jail.'

"Now, then, following that I have adjourned the sentence at—

"*Mr. Nelson:* At my request.

"*The Court:* —at your request on numerous occasions. The more recent date set for sentence was December the 21st, and a few days before that you filed a motion to withdraw your plea of guilty.

"I am informed that after the plea of guilty was accepted Mr. Zaleski went over and procured the release of his car from the Police Department that they were holding as evidence in the matter—is that correct, sir?

"*Mr. Zaleski:* Yes, sir.

"*The Court:* I have looked the examination over again. There is no question in my mind as to the guilt of Mr. Zaleski, and I am going to deny your motion. I am going to proceed to sentence you.

"*Mr. Nelson:* Very well. Having done so, will Your Honor be good enough to grant us a stay, so that we can go to the Supreme Court.

"*The Court:* No, I won't grant any further stay. I am going to sentence you now, and the sentence will be executed immediately. I am going to put you on probation for five years, during which time you may not drive a car; within 12 months you shall pay to the probation department $250 toward the expense that has been caused to the people in this matter as costs. The first six months of that five-year period you will have to spend in the Detroit House of Correction. And I will grant no stay."

This exercise of discretion was made by the trial judge who had the defendant before him through all stages of the proceedings.

In *People* v. *Bencheck,* 360 Mich 430, this Court unanimously reversed a trial judge's denial of a motion to set aside a plea of guilty to a charge of statutory rape. The motion was made on the date

set for sentencing and after his brother, a codefendant, had been sentenced. The motion was made on the ground that defendant, although innocent, had misunderstood his rights when he pleaded guilty.

"Where, as here, a defense of innocence is asserted at the time of a request to withdraw the plea, and the request is not obviously frivolous and is made before commencement of trial and before sentence, the plea should be granted. The right we deal with here is the right to a jury trial, and even what may prove a well-founded belief in defendant's guilt on the part of the trial judge should not impede the exercise of that right." (p 433.)

While reversing the trial judge's denial of defendant's request to withdraw his guilty plea in *Bencheck,* we reiterated our prior views, expressed in *People* v. *Case,* 340 Mich 526, and *People* v. *Banning,* 329 Mich 1, that there is no absolute right to withdrawal of a guilty plea. While the trial judge's discretion should be exercised with great liberality when such request is made before trial and sentence, as we said in *Bencheck,* the trial judge need not grant such request, although made before trial and sentence and although innocence is asserted, when persuaded that the request is obviously frivolous.

Thus, last March, in *People* v. *Davis,* 372 Mich 402, we unanimously affirmed a trial judge's denial of such a request to withdraw guilty pleas, the record having disclosed that the request was made when the defendants were called up for sentence after their counsel had read the probation department's presentence report and had talked to the judge about it without so much as suggesting a desire to withdraw the pleas.

Likewise, in *People* v. *Case, supra,* this Court affirmed a trial judge's denial of a request to withdraw

a guilty plea made immediately after defendant had been characterized by the trial judge as one of the ringleaders of a conspiracy in the process of sentencing a codefendant. This Court, in affirming the trial judge, emphasized that there had been no assertion of innocence in support of the withdrawal request and there had been no reason suggested for the request to change the plea at the time of sentence.

For reasons which we have held adequate to support such requests made before sentence, in addition to *People* v. *Bencheck, supra,* see *People* v. *Piechowiak,* 278 Mich 550; *People* v. *Stone,* 293 Mich 658; *People* v. *Sheppard,* 316 Mich 665; *People* v. *Anderson,* 321 Mich 533; and *People* v. *Hollingsworth,* 338 Mich 161.

In the case at bar, defendant's sole reason for requesting withdrawal of his guilty plea made three months earlier was that the guilty plea had been entered at a time when he was "extremely nervous and suffering from chronic nervous indisposition and stomach ulcers; because of which, and because of mental obfuscation resulting therefrom, he did not then feel he could physically and mentally withstand the strain of a relatively prolonged jury trial on the merits." There was no evidence offered to support this bare allegation. Instead, defendant's counsel relied solely upon a letter, not even offered in evidence, from a "naturopathic physician" counsel himself described as "some kind of a quasi-doctor." Counsel advised the trial judge that the letter described defendant's ailment as chronic diarrhea and stomach ulcer.

No showing is made as to when defendant's condition first occurred or that the condition as of January 2, 1963, had been so corrected as to permit the defendant to go to trial if trial were granted. Apparently, according to his attorney's statement,

Zaleski's disposition is such as to manifest itself as
"a very nervous disposition  *  *  *  when it is
necessary for him to appear before this court in
this matter." Such a phenomenon, it may be re-
marked, is not a completely uncommon or unheard of
manifestation in defendants when brought before
the bar of justice.

We find no error in the trial judge's rejection of
this defendant's request to withdraw his plea. The
reason offered for doing so is no more persuasive to
us than it was to the trial judge.

Affirmed.

Kelly and Black, JJ., concurred with Adams, J.


Souris, J. (*concurring*). I concur in Mr. Justice
Adams' opinion except for its inclusion of part I
thereof, the detailed review of testimony taken at
defendant's preliminary examination. Our decision
herein should be planted solely upon the paucity of
persuasive reason offered by defendant in support
of his motion to withdraw his plea, a deficiency of
such magnitude that it leaves defendant's motion
bordering on the frivolous.

It seems to me that part I of Justice Adams' opin-
ion, when read with regard to the trial judge's
quoted assertions that he had read the examination
testimony and had no question in his mind concern-
ing defendant's guilt, suggests to the bench and bar
of this State that we approve such prior-to-trial
determinations of guilt or innocence, based upon fre-
quently one-sided preliminary examination testi-
mony, as a factor to be considered in granting or
denying a motion to withdraw a guilty plea. That is
not permissible practice as I understand the law.

The preliminary examination has for its limited
purpose only the determination by a magistrate

whether there is probable cause to bind the defendant over for trial; it "is in no sense a trial to determine the guilt or innocence of an accused." *People* v. *McLean* (1925), 230 Mich 423, 425, and cases cited therein. In its essential nature the preliminary examination is inquisitional and to function properly a very broad scope is permitted the people in their offer of proofs sufficient to satisfy the magistrate's inquisition as to probable cause. Not infrequently, defendant offers no proofs of his own and, indeed, may not even choose to cross-examine the witnesses offered by the people. On such testimony, no proper determination of guilt should be permitted for any purpose, let alone for purpose of granting or denying a motion to withdraw a plea of guilty so that defendant's guilt or innocence can be tried to a court or jury.

It is the clear purport of *People* v. *Bencheck* (1960), 360 Mich 430, that such a procedure is reprehensible. This Court there noted that Bencheck had been given "a careful examination in open court wherein defendant recited the facts pertaining to the offence [statutory rape] in great detail", and that the trial court was "obviously convinced of defendant's guilt". Nonetheless, we unanimously continued (p 433), "The right we deal with here is the right to a jury trial, and even what may prove a well-founded belief in defendant's guilt on the part of the trial judge should not impede the exercise of that right."

Other courts in other jurisdictions have reached the same conclusion. In *Friedman* v. *United States* (CCA8, 1952), 200 F2d 690, defendant tried to withdraw his plea of guilty after he was sentenced. The circuit court of appeals upheld the district court's refusal to permit withdrawal of the plea in these terms (p 696):

"The issue of the defendant's guilt or innocence is not involved in an application for leave to withdraw a plea of guilty. *Kercheval* v. *United States, supra,* at page 224 of 274 US, at page 583 of 47 S Ct, [page 1012 of] 71 L ed 1009. Upon such an application a trial court is not required to try the issue of guilt or innocence. The issue for determination is whether the plea of guilty was voluntarily, advisedly, intentionally and understandingly entered or whether it was at the time of its entry, attributable to force, fraud, fear, ignorance, inadvertence or mistake such as would justify the court in concluding that it ought not to be permitted to stand."

In *Kercheval* v. *United States* (1927), 274 US 220 (47 S Ct 582, 71 L ed 1009), in the course of holding inadmissible on trial evidence of a withdrawn plea of guilty, the United States Supreme Court said (p 224):

"But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. *Commonwealth* v. *Crapo,* 212 Mass 209 (98 NE 702). The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just."

See *Nagelberg* v. *United States* (1964), 377 US 266 (84 S Ct 1252, 12 L ed 2d 290).

*Commonwealth* v. *Crapo* (1912), 212 Mass 209 (98 NE 702), affirmed a lower court order denying leave to withdraw a plea of guilty. Such a plea may be withdrawn if the "admission of guilt was not voluntary and intentional, but resulted from inadvertence." The Massachusetts court noted (p 210)

that at the hearing on the motion to withdraw his plea, defendant offered no evidence, even though "at the hearing the defendant's guilt or innocence was not in issue."

*Poole* v. *United States* (1957), 102 App DC 71 (250 F2d 396), reversed the trial court's order denying defendant's request to withdraw his plea of guilty before sentencing, saying (p 75):

"An accused moving to withdraw his plea *after* sentence is faced with the formidable barrier of having to show that his conviction was manifestly unjust. Fed Rules Criminal Procedure, 32 (d), 18 USC p 3427. In this case, the sentencing judge erroneously placed this burden on appellant even prior to sentence when he stated to counsel at the bench: " 'If you find any *facts that indicate he isn't guilty,* file a formal motion.' (Emphasis added)." 250 F2d 396, 400.

See, also, *Gearhart* v. *United States* (1959), 106 App DC 270 (272 F2d 499), and *Everett* v. *United States* (1964), 119 App DC 60 (336 F2d 979).

See note, 64 Yale LJ 590, 591, n 6 (1955), for citations to Federal cases and scholarly writings in support of the statement that "Probable guilt or innocence of the accused has generally been held not to be an issue on motion for withdrawal [of guilty plea]."

T. M. KAVANAGH, C. J., and DETHMERS, SMITH, and O'HARA, JJ., concurred with SOURIS, J.