**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Bill WERRE, Defendant and Appellant.**

Cr. Nos. 829, 831.

Supreme Court of North Dakota.

Oct. 20, 1982.

ERICKSTAD, Chief Justice.

Defendant/Appellant, Bill Werre, asserts that he is appealing from a denial of his motions for withdrawal of guilty plea and for reduction of sentence entered in the District Court of Burleigh County. However, his appeal is actually from a January 27, 1982, order denying his motion for withdrawal of guilty plea and for withdrawal of the admission of probation violation. Werre has not appealed from the order[1] denying his motion for reduction of sentence dated December 18, 1979. Inasmuch as the motion to withdraw the admission of probation violation is so connected with the motion for withdrawal of guilty plea, we will do as counsel have done and refer hereinafter only to the motion to withdraw the plea of guilty. We affirm.

On August 21, 1981, Werre plead guilty to a charge of theft by deception in the District Court of Burleigh County. The court sentenced Werre to serve a term of eight years, four of which were suspended, at the State Penitentiary. At this hearing, Werre also admitted that he had violated the conditions of his probation from a prior conviction. Hence, the court revoked his probation and ordered that he serve the unexpired portion of his sentence. The sentences were to be served concurrently.

On December 16, 1981, Werre filed a motion for reduction of sentence and on December 17, 1981, Werre filed a motion for withdrawal of guilty plea. The district court denied Werre's motions.

Prior to our adjudicating the merits of this appeal, we must first consider Werre's motion for remand on the basis of newly discovered evidence which allegedly further supports his motion for withdrawal of guilty plea. Werre contends that this evidence will prove his innocence. However, the issue of a defendant's guilt or innocence is not involved in an application for leave to withdraw a plea of guilty.[1]

Rolf P. Sletten, Asst. State's Atty., Bismarck, for plaintiff and appellee; argued by Mr. Sletten.

Vinje Law Firm, Bismarck, for defendant and appellant; argued by Richard G. Carver, Bismarck.

1. The issue for determination is whether the plea of guilty was voluntarily, advisedly, intentionally and understandingly entered, or if it was, at the time of its entry, attributable to

*Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927); *Friedman v. United States,* 200 F.2d 690, 696 (8th Cir. 1953); *Rachel v. United States,* 61 F.2d 360, 362 (8th Cir. 1932); *People v. Zaleski,* 375 Mich. 71, 77, 133 N.W.2d 175, 181 (1965). Therefore, we deny Werre's motion requesting a remand. In so holding we do not intend to preclude Werre from pursuing post-conviction relief pursuant to Section 29–32–01(1)(d).[2]

On appeal, the sole issue to be determined is whether or not the district court abused its discretion by denying Werre's motion to withdraw his guilty plea and to reduce his sentence. Werre alleges that the district court erred because he was coerced into entering a plea of guilty to the charge of theft by deception. The crux of Werre's claim is that he plead guilty in exchange for the State foregoing prosecution of his mother on a separate charge.

■ The withdrawal of a guilty plea after sentence is governed by Rule 32(d), North Dakota Rules of Criminal Procedure, which states:

*"(d) Plea Withdrawal.*

(1) The court should allow the defendant to withdraw his plea of guilty whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.

(2) A motion for withdrawal is timely if made with due diligence, considering the nature of the allegations therein, and is not necessarily barred because made subsequent to judgment or sentence.

(3) In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea."

Thus, the standard to be utilized by this court with regard to withdrawal of a guilty plea subsequent to sentence is that of "manifest injustice". A defendant seeking to withdraw his guilty plea bears the burden of proof and adjudication of the issue is solely within the trial court's discretion. *Sherburne v. United States,* 433 F.2d 1350 (8th Cir. 1970); *Byes v. United States,* 402 F.2d 492 (8th Cir. 1968), *cert. denied,* 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969); *Oksanen v. United States,* 362 F.2d 74 (8th Cir. 1966); *Stidham v. United States,* 170 F.2d 294 (8th Cir. 1948). Therefore, on appeal, the only question to be determined is whether or not the court abused its discretion. In *State v. Hamann,* 262 N.W.2d 495, 501 (N.D.1978), we enunciated the following standard:

"In the absence of an abuse of discretion on the part of the trial court, its decision to deny defendant's motion to withdraw her guilty plea will stand."

■ In determining whether or not the court abused its discretion, we regard as significant the unequivocal responses of Werre to direct questions asked of him by the district court when he entered his guilty plea. The pertinent parts of Werre's testimony follow:

"THE COURT: Are you making that plea voluntarily?

"1. Any person who has been convicted of, or sentenced for, a crime and who claims:

\* \* \* \* \* \*

d. That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

\* \* \* \* \* \*

may institute, without paying a filing fee, a proceeding under this chapter to secure relief."

fraud, fear, ignorance, inadvertence or mistake such as would justify the court in concluding that it ought not to be permitted to stand. *United States v. Marcus,* 213 F.2d 230, 232 (7th Cir. 1954); *Friedman v. United States,* 200 F.2d 690, 696 (8th Cir. 1953); *Williams v. United States,* 192 F.2d 39, 40 (5th Cir. 1951); *Rachel v. United States,* 61 F.2d 360, 362 (8th Cir. 1932). *See, also,* ABA Standards for Criminal Justice, Vol. 3, 14.56 (2d ed. 1980).

**2.** *"29–32–01. Remedy—To whom available— Conditions.—*

"THE DEFENDANT: Yes.

"THE COURT: No one has threatened you or forced you in any way to enter that plea?

"THE DEFENDANT: No.

"THE COURT: Has anyone made any promises to you to get you to enter that plea of guilty?

"THE DEFENDANT: Yes.

"THE COURT: What is that?

"THE DEFENDANT: Well, the plea agreement.

"MR. TUNTLAND: No, there is no plea agreement. There is a promise of a recommendation for sentence, your Honor.

    \*    \*    \*    \*    \*    \*

"MR. TUNTLAND: There also has been one further promise that was made.

"THE COURT: And that is?

"MR. TUNTLAND: The State has promised to recommend to the Court that any sentence to the penitentiary that might be imposed would not commence until noon of Sunday, September 6, and that Mr. Werre would be allowed to remain free upon personal recognizance; right?

    \*    \*    \*    \*    \*    \*

"THE COURT: Other than those two items, have any other promises been made to you, Mr. Werre?

"THE DEFENDANT: No, sir.

"MR. SLETTEN: Well, I think there is also another one. There were a number of—there are a number of misdemeanor check charges pending against Mr. Werre in the County Court. All of the checks which make up those charges have now been included in the petition for revocation of probation, and I have told him if he enters a plea of guilty and makes the admission here today that the misdemeanor charges will be dismissed in the County Court.

"THE COURT: Anything else?

"MR. SLETTEN: I think we have now covered all assurances we have made.

"THE COURT: When I refer to promises, I am not just referring to the prosecution. I am also referring to others, such as the Sheriff or some other officer or somebody else suggesting to you that you would get a certain sentence if you pleaded guilty. Has anything like that happened other than what the prosecution has told you?

"THE DEFENDANT: No, sir."

It is evident that the district court endeavored to learn whether or not anyone had coerced or promised Werre anything in return for his guilty plea. When a court has made specific inquiries as to any threats or promises, a defendant's burden of proving a "manifest injustice" will be increased. ABA Standards for Criminal Justice, Vol. 3, 14.56 (2d ed. 1980).

■ In the case at bar, the court also considered the testimony of Thomas Tuntland, Donald Holloway, and John Olson to be of substantial import. In response to questions from the Assistant States Attorney Rolf Sletten, Thomas Tuntland testified as follows:

"Q. Tom, did we talk about whether or not the disposition of the charge against Esther Werre would in any way bear on any agreement that we made on Bill Werre?

"A. Yes, we did. We talked about it.

"Q. What did we tell you?

"A. Now, as near as I can recall, I approached you, at the request of Bill, on a plea wherein, I believe, Bill asked me to inform you that if the charges against Esther would be dropped, or she wouldn't be arrested—I can't remember which—that he would be—that he would consider entering a plea of guilty.

"Q. And what was our response to that? First, let me ask you: Do you recall what the response was?

"A. Yes, I recall what the response was, and I am not sure who made it."

    \*    \*    \*    \*    \*    \*

"A. The response was clear that you would not deal one case for the other. There was further conversation regarding that, but the response was that there would not be a deal on one case for the

other, and that was made very, very clear."

\* \* \* \* \* \*

"Q. Now, did you convey our response to Mr. Werre?

"A. That I did. In conversations with Mr. Werre, I told him that your office's position was that there would be no deal where he would plead guilty and the charges against Esther would be dismissed."

Donald Holloway testified in response to questions from Mr. Sletten as follows:

"Q. Mr. Holloway, are you aware that at some point between the time of the hearing we have just discussed and the time when Mr. Werre ultimately pled guilty, that a charge was also filed against his mother?

"A. Yes, I am.

"Q. Did you ever discuss that with Bill?

"A. I don't recall.

"Q. Did you ever discuss it with us?

"A. Yes. Because his mother called me, and I don't know how I found out that there was a possibility that his mother may be charged. I don't know whether this came from Bill or from Esther or from you. But, in any event, I had asked you not to issue a warrant and have the Sheriff go out, looking to arrest Esther, and if any charge were going to be brought against her or were brought, that you would call me, and you did that at some point in time.

"Q. Did you ever discuss with us or mention to us in any way a suggestion that Bill would plead guilty if we would dismiss the charge against his mother?

"A. I recall that subject.

"Q. Do you recall what our response was?

"A. Well, the response was that the disposition of her charge was completely independent from any charges against Bill. I think Esther had asked me if the

two were tied together and that I should approach you and find out."

John Olson testified in response to questions by Mr. Sletten as follows:

"Q. Do you recall that our office was approached by a suggestion that Mr. Werre should plead guilty and that we in turn should dismiss the charge against Esther?

"A. Yes.

"Q. Do you recall what our response was?

"A. Well, I recall that as Mr. Tuntland does. I know there was a conversation in my office and not yours, and Mr. Tuntland was there, and you were there, and I was there, and he was making this proposal, and we just said: Forget it. There is no way that we are going to plea bargain or take it into consideration or anything. And that was the essence of our discussion.

"Q. Do you recall that the testimony of Mr. Holloway and Mr. Tuntland on that point was correct?

"A. Yes."

As the record clearly supports the district court's denial of Werre's motion for withdrawal of guilty plea, we find no abuse of discretion.[3]

As both counsel for Werre and for the State assume that an appeal has been taken from the order denying the motion for a reduction in the sentence, we will refer briefly to that issue.

In *State v. Sheldon*, 312 N.W.2d 367, 371 (N.D.1981), we delineated the standard to be utilized in determining whether or not a trial court abused its discretion in denying a motion for reduction of sentence under Rule 35, N.D.R.Crim.P.:

"[I]t will not set aside a sentence on the ground that the trial court abused its discretion unless the sentence exceeds the statutory limits or the court has substantially relied upon an impermissible factor in determining the severity of the sentence." 312 N.W.2d at 371.

---

3. The record indicates that Thomas Tuntland was Werre's attorney, that Donald Holloway apparently was Werre's mother's attorney, and that John Olson was the attorney for the State at the time of Werre's initial plea of guilty in this case.

See, also, *State v. Hass,* 268 N.W.2d 456, 464 (N.D.1978); *State v. Rudolph,* 260 N.W.2d 13, 16 (N.D.1977); *State v. Smith,* 238 N.W.2d 662, 673 (N.D.1976). Accordingly, we find no abuse of discretion where Werre has not alleged and the district court has not relied on any impermissible factors or imposed a sentence exceeding the statutory limits.

We therefore affirm the district court's denial of the motion for withdrawal of guilty plea under Rule 32(d), N.D.R.Crim.P., and the motion for withdrawal of admission of probation violation.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.