**Robert DOYLE, # 201447, Petitioner,**

v.

**Debra SCUTT, Respondent.**

**No. 03–CV–40213–FL.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 1, 2004.

Robert Doyle, Jackson, MI, pro se.

Raina I. Korbakis, Brenda E. Turner, Michigan Department of Attorney General, Lansing, MI, for Respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

### I. Introduction

Petitioner Robert Doyle has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. Petitioner was convicted pursuant to a plea of no contest in Livingston County Circuit Court of one count of armed robbery, M.C.L. § 750.529, and one count of conspiracy to commit armed robbery, M.C.L. § 750.157a. Petitioner was sentenced to concurrent terms of twenty to forty years imprisonment for each conviction.

In his pleadings, Petitioner claims 1) that he was denied due process of law by the absence of an attorney and an interpreter for the hearing impaired at his arraignment; 2) that his no contest plea was involuntary and unintelligent; 3) that the prosecution breached the plea agreement; 4) that he was denied effective assistance of counsel; 5) that his sentence is based on false information; 6) that his sentence is grossly disproportionate; and 7) that the prosecution withheld key evidence. For the reasons stated below, the Court will deny the petition for a writ of habeas corpus.

### II. Facts

Petitioner's convictions and sentence arise from his participation in the armed robbery of one restaurant and an attempted armed robbery of another restaurant. At the completed robbery, the victim was assaulted at gunpoint, robbed of money, and "stuffed into a freezer" to allow Petitioner and his co-defendants to make their getaway. Sent. Trans, at 29. During both crimes, the perpetrators were armed with a twelve gauge shotgun.

At Petitioner's plea hearing, the trial judge informed him of the maximum sentence he faced on each count, which was life imprisonment. Plea Trans. at 13, 16. Petitioner was informed that a plea of no contest would have the same legal effect as a conviction after trial. *Id.* at 15–16. It was stated on the record that, in exchange for Petitioner's no contest plea to one count of armed robbery and one count of attempted armed robbery, the prosecution

would dismiss the fourth felony habitual offender charges and felony firearm charges in each of the cases to which Petitioner pled no contest. The prosecution would also dismiss two additional charges of breaking and entering and one additional charge of larceny over one hundred dollars, all of which were supplemented by fourth felony habitual offender charges. *Id.* at 10–12. The prosecution would also recommend that Petitioner be sentenced within the sentencing guidelines. *Id.* at 11. The prosecution noted that there was a mandatory minimum sentence of one year for armed robbery. *Id.* at 16.

Petitioner stated that he understood that his *minimum* sentence would be between five and twenty-five years under the guidelines. *Id.* at 16. The prosecutor stated that, if for any reason the judge wanted to exceed the guideline minimum sentence, Petitioner would have the right to withdraw his plea and go to trial and that, if he did so, he could be convicted as a habitual offender and the guidelines would not apply. *Id.* at 13–14.

At the plea hearing, Petitioner initially accused his counsel of lying to him. *Id.* at 4–6. Petitioner alleged that his counsel told him that his sentence would be four to twenty years or four to twenty-five years if he were not the leader of the group, and ten to twenty-five years if he were the leader of the group; Petitioner also accused his counsel of generally failing to communicate with him, and alleged that he did not know what sentence he was facing. *Id.* Trial counsel denied Petitioner's allegations, pointed out the advantages of the plea agreement he had negotiated, and made a motion to withdraw as counsel. *Id.* at 6. The trial judge asked Petitioner if he wished to continue to be represented by his current lawyer or if he wanted the judge to appoint him a new lawyer. *Id.* at

9. Petitioner replied that he wanted to keep his attorney. *Id.* at 9.

The trial judge informed petitioner of the constitutional rights he would be giving up by pleading guilty, including 1) the right to a jury trial, or a bench trial if he waived his right to a jury trial, *Id.* at 17; 2) the right to the presumption of innocence; 3) the right to require the prosecution to prove every element of the crimes charged beyond a reasonable doubt; 3) the right to compel the appearance of witnesses he wished to call on his behalf; and 4) the right to remain silent, or to testify on his own behalf, as he saw fit. *Id.* at 19.

Petitioner stated that no threats or promises had been made to induce his plea, other than the promises set down on the record in open court, and that it was his free and voluntary choice to plead no contest to the two charges as set forth above in exchange for dismissal of the additional charges and the prosecution's recommendation that his sentence be within the sentencing guidelines. *Id.* at 17–23. It was also stated on the record that Petitioner's co-defendants had already negotiated plea agreements and had agreed to testify against Petitioner, if necessary. *Id.* at 12. Petitioner affirmed that his attorney had explained the nature of the charges against him to his complete satisfaction. *Id.* at 16. After this careful and thorough procedure, the trial judge stated that he was "satisfied that the waiver in this case is freely and voluntarily made," and Petitioner's plea of no contest was accepted by the court. *Id.* at 18, 26.

At petitioner's sentencing hearing, petitioner moved to withdraw his no contest plea. Sent. Trans. at 4–6. Petitioner alleged that he misunderstood the plea agreement and believed that he had obtained a better sentencing agreement than he actually had. *Id.* at 4–6, 11. Petitioner then asserted his innocence and contended

that trial counsel had never asked him if he was innocent. *Id.* at 5, 11. Petitioner contended that he only agreed to plead no contest because he knew that he had a bad record and believed that the plea agreement meant that he would plead to certain things, all charges would be dropped, and he would have the opportunity to explain what happened. *Id.* at 27. Petitioner denied involvement in the armed robbery; he asserted that he knew about the crimes, but was not present. *Id.* at 29. Petitioner admitted that he let his co-defendants use his van, which they drove to the crime scenes, but denied involvement in, or knowledge of, the armed robbery and conspiracy to commit armed robbery crimes. *Id.* at 28–29.

The trial judge declined to allow petitioner to withdraw his no contest pleas, noting Petitioner's lengthy criminal history[1] and that the armed robbery victim had been "stuffed into a freezer," *Id.* at 14, 29. The prosecution contended that "[w]hile his history certainly doesn't indicate a lot of violence, he graduated to eliciting other people[, p]rimarily younger people, to assist him. He used firearms and became involved in assaultive crimes." *Id.* at 25. The prosecution further argued that, although Petitioner had not actually held the shotgun during the incidents, he had aided and abetted the perpetrator who did hold the gun, that society needed to be protected from him, and that a lengthy sentence should be imposed. *Id.* at 24–25. The trial judge agreed and sentenced Petitioner accordingly. *Id.* at 25, 29.

## III.   Procedural History

Following sentencing, petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. Leave to appeal was granted and the Michigan Court of Appeals affirmed petitioner's convictions and sentences after considering his claims on the merits. *People v. Doyle,* Nos. 226691, 226692, 2002 WL 87491 (Mich.App. Jan. 22, 2002)(*per curiam*). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Doyle,* 467 Mich. 891, 653 N.W.2d 409 (2002).

Petitioner filed the instant petition for a writ of habeas corpus August 26, 2003, raising the following claims as grounds for relief:

I.   Since petitioner is hearing impaired, did the denial of an interpreter, and lawyer at his video arraignment effectively deny him of [sic] his constitutional due process right to a proper arraignment?

II.   Was petitioner denied his constitutional right to effective assistance of counsel, and therefore is entitled to a new trial and/or an evidentiary hearing pursuant to *People v. Ginther,* 390 Mich. 436, 212 N.W.2d 922 (1976)?

III.   Was petitioner's *nolo contendere* plea not voluntary or intelligent as he claimed his innocence and did the trial court clearly err and deny petitioner due process of law in denying his pre-sentence motion to withdraw his plea? U.S. Const. Am. VI, XIV; Mich. Const.1963, Art. I, Sec. 17–20.

IV.   Was petitioner denied his right to a fair proceeding where the prosecutor failed to uphold his promise in the plea bargain and withheld crucial evidence in violation of *United States v. Francis,* 170 F.3d 546 (6th Cir.1999)?

V.   Were petitioner's sentences based on false information, and grossly disproportionate to the agreed upon plea bargain, which violates the Constitution of

---

1.   Petitioner did not dispute the trial judge's statement that he had fourteen prior felony convictions and three prior misdemeanor convictions. Sent. Trans. at 29–30.

the United States, U.S. Const. Am. VIII?

## IV. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner is entitled to relief only if he can show that the state court's adjudication of his claims on the merits either

a. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

b. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003).

■ A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495.

■ Finally, Section 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir.1998).

## V. Discussion

### A. Denial of Interpreter and Counsel at Arraignment

Petitioner contends that his right to due process was violated because his video arraignments were conducted in the absence of an interpreter and counsel. In *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), the United States Supreme Court held that prejudice may be presumed from the absence of counsel at an arraignment on the charges. Nevertheless, the Supreme Court's holding in *Hamilton* was based on a finding that "[a]rraignment under Alabama law is a critical stage of the criminal proceeding," because under Alabama law it is at that time that various available defenses must be pleaded or be irretrievably lost. *Id.* at 53–54, 82 S.Ct. 157.

■ Review of the record shows that Petitioner was arraigned on charges in videotaped proceedings in the absence of counsel or an interpreter on two occasions. On both occasions, the judge (through a deputy who, while facing Petitioner, repeated what the judge said so that petitioner could read his lips) informed Petitioner of the charges against him, of his right to remain silent, the fact that anything he said could be used against him in court, his right to have an attorney to be appointed by the court or to hire his own attorney, his right to have an attorney present whenever he was questioned, and his right to a preliminary hearing within

fourteen days. The court inquired whether Petitioner required an interpreter for his preliminary examination, and informed Petitioner that counsel and interpreter would be appointed for his preliminary examination.[2] No plea was taken at Petitioner's first video arraignment. The court entered a plea of not guilty on Petitioner's behalf at the second video arraignment. Petitioner was asked no questions other than his name and whether he required appointment of counsel and an interpreter and Petitioner made no statements at the two arraignments.

In *Lundberg v. Buchkoe*, 389 F.2d 154 (6th Cir.1968), the Sixth Circuit considered whether a Michigan defendant's denial of counsel at arraignment denied him due process and whether the arraignment in Michigan is a critical stage of the criminal proceeding. The Sixth Circuit decided these questions in the negative, explaining that:

> In Michigan the 'preliminary examination has for its limited purpose only the determination by a magistrate whether there is probable cause to bind the defendant over for trial....' *People v. Zaleski*, 375 Mich. 71, 81–82, 133 N.W.2d 175 (1965); *See People v. Podolski*, 332 Mich. 508, 518, 52 N.W.2d 201, *cert. denied*, 344 U.S. 845, 73 S.Ct. 62, 97 L.Ed. 657 (1952). In light of the above principles, it cannot be said that Michigan's arraignment and preliminary examination proceedings, in and of themselves, constitute a critical stage of the proceedings. Nor were there any special circumstances in appellant's case which might suggest that the proceedings were critical; no plea or statement was in fact obtained from appellant at his arraignment and, aside from his right not to be held in custody absent

probable cause, appellant neither lost nor waived any right or defense. The fact that appellant might have received some collateral benefit in the form of pretrial discovery had he not waived examination is immaterial. *See Wilson v. Harris, supra; United States ex rel. Cooper v. Reincke*, 333 F.2d 608 (2nd Cir.), *cert. denied*, 379 U.S. 909, 85 S.Ct. 205, 13 L.Ed.2d 181 (1964). Appellant's claim that his conviction is invalid because of the denial of the assistance of counsel at his arraignment proceedings is thus rejected.

*Lundberg*, 389 F.2d at 158.

Petitioner has not alleged that he made any incriminating statement at his arraignments or that he lost any available defenses by not pleading them at his arraignments. Furthermore, even assuming that the arraignment was a "critical stage" of Petitioner's proceedings, he did not plead guilty. No statement of alleged facts was made against petitioner and no questions were asked of him concerning the crimes charged. Petitioner made no incriminating statement whatsoever, and was not called upon to waive assistance of counsel or any other constitutional right. Consequently, petitioner has not shown that the deprivation of any constitutional right took place at his arraignments.

Moreover, although the Michigan Court of Appeals found that the district court erroneously failed to provide petitioner an interpreter at his arraignments, the appeals court also found that this state law error under the Michigan Deaf Persons' Interpreters Act, M.C.L. § 393.501, *et seq.*, was harmless because petitioner did not demonstrate any prejudice from the absence of an interpreter at the proceedings.

---

**2.** Review of the preliminary examination transcript shows that both defense counsel and an interpreter were present at this proceeding.

■ Thus, this Court concludes that petitioner has failed to show that the Michigan courts' denial of his claims concerning the absence of an attorney and an interpreter at his arraignments was contrary to, or an unreasonable application of, federal constitutional law as established by *Hamilton v. Alabama,* or an unreasonable result under the AEDPA. Furthermore, erroneous rulings on matters of state law cannot lead to habeas corpus relief, *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) ("federal court may not issue the writ on the basis of a perceived error of state law").

### B. No Contest Pleas

■ A guilty or no contest plea entered into in state court must be voluntarily and intelligently made. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Petitioner contends that his were not. A guilty or no contest plea involves the waiver of several federal constitutional rights. Among those rights are 1) the privilege against compulsory self-incrimination; 2) the right to trial by jury; and 3) the right to confront and cross-examine one's accusers. *Id.* at 243, 89 S.Ct. 1709. The courts are not to "presume a waiver of these three important federal rights from a silent record." *Id.* The controlling standard for the waiver of these rights through a plea of guilty is the classic definition of waiver enunciated in *Johnson v. Zerbst:* "an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ A plea is voluntary when it has not been induced by improper coercion or threat, by misrepresentation, or by improper representations such as bribes, and the defendant is fully aware of the direct consequences of the plea when he enters into it. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Petitioner does not allege that he was threatened or coerced or that any unfulfilled promises were made to induce his plea.

■ Petitioner alleges that he was misled by counsel to believe that he would receive a less severe sentence than the twenty to forty year concurrent sentences imposed by the sentencing judge. However, review of the plea transcript clearly shows that the trial judge explained to Petitioner that his plea agreement indicated that his maximum sentence exposure was life imprisonment and that his minimum sentences were only limited by being within the minimum sentence guideline range on each count. *See King v. Dutton,* 17 F.3d 151, 153 (6th Cir.1994); *Hart v. Marion,* 927 F.2d 256, 258–59 (6th Cir. 1991). Petitioner stated under oath that he understood this. Petitioner did not attempt to withdraw his plea at that time, or state that he no longer wished to plead guilty after being informed of these facts. Petitioner agreed at the plea proceeding that counsel had fully informed him of the nature of the charges against him. *See Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

The trial judge explained that, by pleading no contest, petitioner would be convicted and would give up many constitutional rights. Petitioner was also informed that, by pleading no contest, he would give up the right to an appeal of right and have the right to seek appeal by leave only. Petitioner affirmed that he understood all of the rights he would be relinquishing by pleading no contest. Petitioner was asked if anyone had threatened, coerced, or intimidated him, used undue influence or

force, or made him any promises not previously stated on the record, to induce him to plead no contest or guilty. Petitioner affirmed that none of these things had happened. Only after conducting this thorough and careful procedure did the trial judge accept petitioner's no contest plea. Thus, petitioner's claim that his pleas were not voluntarily and intelligently made lacks merit.

### C. Breach of Sentence Agreement

■■ Petitioner alleges that he was misled to believe that his sentences would be shorter than those imposed. A plea agreement consists of the terms revealed in open court, where the trial court scrupulously follows the required procedure for taking the defendant's plea. *Baker v. United States,* 781 F.2d 85, 90 (6th Cir. 1986). A federal court will uphold a state court guilty or no contest plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty or no contest. *See Cunningham v. Diesslin,* 92 F.3d 1054, 1060 (10th Cir.1996).

This applies with all the more force where, as here, petitioner's allegations as to his understanding of the plea bargain are directly, explicitly, and thoroughly contradicted by the plea transcript, including his own sworn testimony found therein. *See Nichols v. Perini,* 818 F.2d 554, 558–59 (6th Cir.1987); *see also Bair v. Phillips,* 106 F.Supp.2d 934, 940–41 (E.D.Mich. 2000). Here, petitioner was sentenced within the minimum guideline range after being correctly informed about his sentencing exposure.

Not only does Petitioner fail to show that he did not receive the sentence he had been promised, several additional felony charges, habitual offender supplements, and two felony firearm charges, were dismissed as part of the plea bargain. Through this dismissal, Petitioner avoided exposure to additional life sentences and mandatory consecutive prison terms. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Neither has Petitioner shown that his sentencing agreement was illusory. "He clearly received other substantial, tangible benefits in exchange for his plea," in addition to being sentenced within the minimum sentence guideline range as promised. *Daniel v. Overton,* 845 F.Supp. 1170, 1175 (E.D.Mich.1994).

■■ Petitioner also contends that the prosecution breached a sentencing promise by taking restitution payments from his prison account during his incarceration. Although Petitioner stated at his plea hearing that his understanding of his restitution obligation was "to pay back all that I owe when I get out," neither the prosecutor nor the judge commented on this statement. Plea Trans. at 21. Instead, the sentencing judge informed petitioner that restitution was a "condition of parole." Sent. Trans. at 29. Nothing in the record indicates that the prosecutor or judge promised petitioner that his restitution payments would not begin until he was released from prison.

This Court is not persuaded that petitioner is entitled to relief due to prison authorities taking restitution payments from his prison account for two reasons. First, the plea agreement was silent and the record is ambiguous on the matter of when restitution payments would begin. Habeas relief should not be granted by crediting a petitioner's subjective version of his understanding of the plea bargain. *See Nichols,* 818 F.2d at 558–59. Second, this Court is not persuaded that petitioner's decision whether or not to plead no contest rested in "any significant degree" on when his restitution payments would

begin. *Santobello,* 404 U.S. at 262, 92 S.Ct. 495 (1971). Dismissal of the habitual offender charges and the other felony charges, including the mandatory consecutive sentence felony firearm charges, and the agreement to sentence petitioner within the minimum sentence recommended guideline range despite his extraordinarily robust accumulation of prior felony convictions was far more important. When his restitution payments would start is insignificant compared to the sentencing advantages Petitioner gained through his negotiated no contest plea bargain.

### D. Ineffective Assistance of Counsel

Petitioner alleges that he received ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim a petitioner must show that deficient attorney performance actually prejudiced the defense. This requires the petitioner to show that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Sixth Circuit, applying the *Strickland* standard, held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996).

In the guilty plea context where it is claimed that ineffective assistance of counsel induced the plea, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). This determi-nation depends in large part on a prediction of what the outcome of a trial might have been, as well as whether the petitioner was materially misinformed about the relevant circumstances and likely consequences of the plea. *Id.* at 58–60, 106 S.Ct. 366; *Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir.1994). The petitioner must show there is a reasonable probability that, but for counsel's errors, he would not have pled guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. *Hill,* 474 U.S. at 58–60, 106 S.Ct. 366. Such is the case here where, before petitioner pleaded no contest, his two co-defendants had already tendered guilty pleas and agreed to testify against him.

Petitioner has not shown that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded no contest. In exchange for his no contest plea, petitioner was sentenced within the minimum sentencing guidelines and he gained dismissal of serious charges which could have resulted in an even longer sentence upon conviction. Petitioner fails to show that, but for attorney error, he would have reasonably insisted on going to trial. *See Id.*

### E. Sentence Based on False Information

Petitioner contends that his twenty to forty year concurrent sentences are based on false information. Petitioner asserts that his guideline minimum sentence range was miscalculated because he received negative scoring points for terrorizing a victim by locking him in a freezer and that this alleged miscalculation increased his

sentence. The Michigan Court of Appeals rejected this claim finding that the trial court's determination that petitioner terrorized one of his victims was supported by the record and was not an abuse of discretion. Petitioner also contends that his sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment

■ Petitioner's claim fails for the following reasons. First, matters of sentencing properly belong within the province of the state criminal justice system. State rules of sentencing ordinarily to do not raise constitutional issues which can be reached by habeas corpus review. *Holmes v. Israel,* 453 F.Supp. 864 (D.C.Wis.1978), *aff'd,* 618 F.2d 111 (1980). In considering a habeas corpus petition, a federal court will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking. *Id.*

■ To the extent that petitioner asserts a violation of the Michigan Constitution or Michigan Court Rules, or alleges an error of state sentencing law, his claim is not cognizable on federal habeas review. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Pulley,* 465 U.S. at 41, 104 S.Ct. 871 (1984). In short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations. Therefore, any error in calculating his guideline score alone does not merit habeas relief.

## F. Disproportionate Sentence

■ Petitioner's claim that his sentence is grossly disproportionate to his crime and circumstances in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *Cook v. Stegall,* 56 F.Supp.2d 788, 797 (E.D.Mich. 1999). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir.2000). Generally, federal habeas review of a state court sentence ends once the court makes a determination that the sentence is within the limitation set by statute. *Dennis v. Poppel,* 222 F.3d 1245, 1258 (10th Cir.2000); *see also Allen v. Stovall,* 156 F.Supp.2d 791, 795 (E.D.Mich. 2001). As the maximum sentences under Michigan law for armed robbery is imprisonment for life or any term of years, petitioner's sentence is within the limitation of the statute.

■ Furthermore, strict proportionality between a crime and its punishment is not required by the Eighth Amendment, *Harmelin v. Michigan,* 501 U.S. 957, 959–60, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), and only an extreme disparity between the crime and the sentence offends the Eighth Amendment. *United States v. Marks,* 209 F.3d 577, 583 (6th Cir.2000). Following *Harmelin,* the Sixth Circuit has ruled that "there is no requirement of strict proportionality; the Eighth Amendment is offended only by an extreme disparity between crime and sentence." *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir. 1991). A sentence that falls below the maximum penalty set by statute generally does not constitute cruel and unusual punishment. *Austin,* 213 F.3d at 302. Petitioner's sentence falls below the statutory maximum penalty established by Michigan law.

Additionally, petitioner's sentence is not grossly disproportionate to his crime;

there is no extreme disparity between petitioner's crime and his sentence. As the trial judge noted, petitioner was convicted of very serious crimes where a shotgun was used to carry out an armed robbery and an attempted armed robbery. These crimes carried with them the potential for death or great bodily harm. Although this did not occur here, the victims were no doubt terrified and psychologically harmed. Further, the record also supports the trial judge's conclusion that, having been convicted of fourteen prior felonies besides those at issue in the case at bar, and having begun to recruit younger persons to assist him in committing violent, assaultive crimes, petitioner's sentence was properly based in part on the need to protect society from him. The Michigan Court of Appeals' decision denying petitioner relief from his sentences is not contrary to, or an unreasonable application of, federal constitutional sentencing law, or an unreasonable result under the AEDPA.

### G. Withholding of Evidence

 Petitioner alleges in his statement of his fourth habeas claim that the prosecution withheld crucial evidence violating his constitutional rights. However, petitioner has not said anything about this claim or alleged any specific facts supporting this claim in his habeas petition or supporting brief. Therefore, this Court need not address this claim further, except to say that merely stating in a conclusory manner that a constitutional right was violated does not entitle the petitioner to habeas relief, unless review of the record shows such a violation did indeed occur. Petitioner's conclusory claim of the withholding of unspecified, unidentified evidence is insufficient to merit relief. *See, e.g., Maddox v. Lord,* 818 F.2d 1058, 1061 (2d Cir.1987) (court can deny habeas relief when claims are "merely 'vague, concluso-

ry, or palpably incredible' "); *United States v. Romano,* 516 F.2d 768, 771 (2d Cir.1975) (habeas relief properly denied where prosecutorial misconduct claim consisted of only "conclusory allegations").

### VI. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented. **ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus [docket entry 1] is **DENIED with prejudice.**